Thiago M. Coelho, SBN 324715
thiago@wilshirelawfirm.com
Carolin K. Shining, 201140
cshining@wilshirelawfirm.com
Jonas P. Mann, SBN 263314
jmann@wilshirelawfirm.com
Jennifer M. Leinbach, SBN 281404
jleinbach@wilshirelawfirm.com
Jesse S. Chen, SBN 336294
jchen@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff
and Proposed Class*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOMON PASSARIELLO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FORBES MEDIA, LLC, a Delaware Limited Liability Company, and Does 1-100,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Salomon Passariello ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action for violations of the federal Video Privacy Protection Act, 18 U.S.C. §2710 ("VPPA"). Plaintiff's claims arise from Defendant's practice of knowingly disclosing its readers' personally identifiable information, including but not limited to, their Facebook ID ("FID") and data files containing their reader's video viewing history and corresponding URL viewed. Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based upon, *inter alia*, the investigations of his attorneys.

## NATURE OF THE ACTION

1. Forbes Media LLC ("Defendant" or "Forbes") is a global media, branding and technology company with a focus on news and information about business, investing, technology, entrepreneurship, leadership and affluent lifestyles.

2. Defendant develops, owns and operates Forbes.com, a business and technology website. Forbes.com employs the slogan "Home Page for the World's Business Leaders," and claims to be the world's most widely visited business website.[1] Indeed, hundreds of millions of readers visit Forbes.com every month, and the website boasts an estimated annual revenue of between $100 to $200 million.[2]

3. The Forbes.com website contains articles contain Meta Tracking Pixels ("Pixel(s)"). Pixels are a type of code released by Meta Platforms, Inc. ("Facebook") that advertisers can integrate into their website, and which can be used to record and aggregate the personal identifiable information of individuals who visit that website. Specifically, Defendant implemented Pixels that "track[] the people and type of actions they take,"[3] such as their unique Facebook ID in

---

[1] https://www.nytimes.com/2006/08/28/technology/28forbes.html
[2] https://www.similarweb.com/website/forbes.com/
[3] https://www.facebook.com/business/goals/retargeting

2
COMPLAINT

association to what video content that they viewed, while browsing the Forbes.com website. Those Pixels then transmitted a record of those tracked people and actions to Facebook, who processed, analyzed and assimilated it into their datasets.

4.  In implementing Pixels into the Forbes.com website, Defendant knew or should have known that they were disclosing their customer's personally identifiable information—including a record of every article they view on the website—to Facebook, without consent. In doing so, Defendant violated the Video Privacy Protection Act ("VPPA").

## THE PARTIES

5.  Plaintiff Salomon Passariello is a California resident residing in Van Nuys, California. Plaintiff has been a subscriber to Forbes.com since in or around 2019 and has viewed, on occasion, video content on the Forbes.com website throughout the duration of his ongoing subscription.

6.  Defendant Forbes Media, LLC is a Delaware limited liability company with its principal place of business at 499 Washington Blvd., 9th Floor, Jersey City, NJ 07310. Defendant's registered agent for service of process is CT Corporation System, located at Corporation Trust Center 1209 Orange St., Wilmington, DE 19801.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over the state law claims asserted herein pursuant to the federal question doctrine, 28 U.S.C. §1331, because Plaintiff's claims arise out of federal law. Further, this Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because Plaintiff is a citizen of a State different from the Defendant and, upon the original filing of this complaint, members of the putative Plaintiff class resided in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

8. The Court also has personal jurisdiction over the Parties because Defendant routinely conducts business in California and has sufficient minimum contacts in California to have intentionally availed themselves to this jurisdiction by marketing and selling their website subscriptions in California.

9. Venue is proper in this District because, among other things: (a) Plaintiff is a resident of this District and a citizen of this state; (b) Defendant directed its activities at residents in this District; and (c) many of the acts and omissions that give rise to this Action took place in this judicial District.

10. Venue is further appropriate in this District pursuant to 28 U.S.C. § 1391 because, among other things: (a) Plaintiff resides in the Central District, (b) Defendant conducts substantial business in the Central District, (c) Defendants directed their services at residents in the Central District; and (d) many of the acts and omissions that give rise to this Action took place in the Central District.

## FACTUAL ALLEGATIONS

### A. The Video Privacy Protection Act

11. The VPPA was passed as forward-thinking legislation intended to enshrine privacy protections in the face of ever-progressing consumer data aggregation. In 1987, Justice Robert Bork was nominated to the Supreme Court. During his confirmation process, a rental movie store that Justice Bork frequented disclosed his video rental history to the Washington City Paper, who published it. Congress, concerned by the privacy-intruding precedent set by this disclosure, passed the VPPA the following year. Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively

easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, and what sort of television programs hey watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

12. The VPPA prohibits "video tape service provider[s]" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. §2710(b)(1). The VPPA defines a video service provider as "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video table cassette tapes of similar audio visual materials." 18 U.S.C. §2710(a)(4).

13. Defendant is a video tape service provider as defined under the VPPA, as it is in the business of hosting and distributing video content on its Forbes.com website.

14. The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. §2710(a)(3). The Pixels which Defendant has implemented into its Forbes.com website capture exactly this type of information and transmit and disclose it to Facebook—in violation of the VPPA.

15. More specifically, Defendant uses Pixels on Forbes.com to share the personal viewing information—*i.e.*, a reader's unique Facebook ID and video content viewed—together as one data point to Facebook. Because a reader's Facebook ID uniquely identifies an individual's Facebook user account, Facebook—or any other ordinary person—can use it to locate, access, and view digital subscribers' corresponding Facebook profile quickly and easily. As a result, Facebook is able to discern exactly what video content any Forbes.com subscriber has viewed on the Forbes.com website.

16. Defendant uses Pixels on their website in order to display targeted advertising to its readers. In doing so, Defendant profits handsomely from the unauthorized and non-consensual disclosure of its reader's personal identifying information. Plaintiff and other Forbes.com subscribers are not informed of Defendant's disclosure of their personal identifying information and are thus unable to take steps to defend themselves against it.

**B.    The Meta Tracking Pixel**

17. Facebook generates revenue by selling advertising space on its website. To court advertisers, Facebook touts its ability to generate and compile accurate profiles of its users "interests," "behavior," and "connections,"[4] beyond that which its users explicitly disclose. Facebook then offers advertisers the ability to build "Custom Audiences," which allow advertisers to target "people who have already shown interest in [their] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[5] Advertisers can then use those Custom Audiences to target existing customers directly, or target new customers by building a "Lookalike Audience" through "leverag[ing] information such as demographics, interests, and behavior" from their "source audience to find new people who share similar qualities."[6] To build a Lookalike Audience, however, an advertiser must supply Facebook a "source audience"—or in other words, the personal identifying information of their existing consumer base. The primary method that online publications such as Defendant use to provide this source audience is by implementing Facebook's Pixels on their websites.

---

[4] "Ad Targeting: Help Your Ads Find the People Who Will Love Your Business" https://www.facebook.com/business/ads/ad-targeting (last accessed November 21, 2022).

[5] "About an Events Custom Audience" https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last accessed November 21, 2022).

[6] "About Lookalike Audiences" https://www.facebook.com/business/help/164749007013531?id=401668390442328 (last accessed November 21, 2022).

18. Advertisers, like Defendant, are provided Pixels from Facebook to integrate into their website code. Once integrated, the Pixel "tracks people and the types of actions they take."[7] The Pixel then takes that captured data and transmits a record to Facebook, who processes it, analyzes it, and compiles it into datasets. These datasets are then provided to advertisers like Defendant as Custom Audiences or Lookalike Audiences.

19. In particular, advertisers like Defendant are able to control what "Events"[8] the Pixel can collect on their websites. These events include the various ways that a visitor interacts with a specific webpage—including when they enter their personal information onto the website's fields or portal, whether they subscribe, and whether or not they viewed the video content on a specific webpage. The content a visitor views on an advertiser's webpage is listed as a "Standard Event" that advertisers can select for tracking when they implement a Pixel.[9] Advertisers can also create their own "Custom Events" to track.[10]

20. Advertisers are also able to control how the Pixel identifies visitors. The Pixel can be configured to collect the following data: Http Headers (including "IP addresses, information about the web browser, page location, document, referrer and person using the website"), Pixel-specific Data, Button Click Data (including "any buttons clicked by site visitors, the labels of those buttons and any pages visited as a result of the button clicks"), Optional Values (including custom

---

[7] "Retargeting", https://www.facebook.com/business/goals/retargeting (last accessed November 21, 2022).
[8] "Facebook Pixel Events," https://www.facebook.com/business/m/one-sheeters/facebook-pixel-events (last accessed November 21, 2022).
[9] "Specifications for Facebook Pixel standard events" https://www.facebook.com/business/help/402791146561655?id=1205376682832142 (last accessed November 21, 2022).
[10] "About standard and custom website events," https://www.facebook.com/business/help/964258670337005?id=120537668283 142 (last accessed November 21, 2022).

events), and Form Field Names (website fields that a visitor would enter their personal information into when, for example, purchasing a product or service).[11]

### C. Defendant's Implementation of the Meta Tracking Pixel in Violation of the VPPA

21. Defendant hosts and delivers thousands of videos to its subscribers on its Forbes.com website, both featuring them as standalone content and embedding them into articles. Defendant monetizes these videos by showing pre-roll advertisements—video advertisements that must be viewed before the selected video can be played. Forbes also monetizes these videos by placing embedded advertisements on the webpages containing the videos.

*Figure 1. Forbes.com Video Article with Pre-Roll and Embedded*



---

[11] "Meta Pixel," https://developers.facebook.com/docs/meta-pixel (last accessed November 21, 2022).

*Advertisements*[12]

22. On those same webpages, Forbes has implemented Meta Tracking Pixels which collect and transmit visitor data to Facebook. For example, in the webpage depicted in Figure 1, Forbes has implemented two Pixels that detected, collected and transmitted personal identifying information to Facebook.

*Figure 2. Pixels Implemented in Figure 1 Webpage*



23. Specifically, the "PageView" Pixel transmits and discloses the URL of the webpage, along with whether or not that webpage contains a video.

---

[12] https://www.forbes.com/video/6315814405112/biden-asks-supreme-court-to-reinstate-student-loan-forgiveness--heres-where-program-stands-now/?sh=13432dfa71d5. (last accessed November 29, 2022).

*Figure 3. Event transmitted by "PageView" Pixel*



24. Likewise, the "ViewContent" Pixel transmits and discloses the URL, and that the webpage contains video content.

*Figure 4. Event transmitted by "ViewContent" Pixel*



10
COMPLAINT

25. As both of the PageView and ViewContent Pixels collect and transmit the full URL of the webpage visited in plaintext, any ordinary individual provided with that information could determine what video a visitor of that webpage watched. That individual can do so by copy and pasting that transmitted URL into their web browser, which would then lead them to the webpage containing the title, location and content of that video.

26. Defendant's Pixels work alongside Facebook and Defendant's own cookies—small pieces of code stored in internet browsers that can be used to track information about website visitors—to collect and aggregate consumer data. When a visitor accesses a webpage containing a video on the Forbes.com website while logged into their Facebook account, the Forbes.com website compels the visitor's browser to transmit a set of cookies to Facebook. This set of cookies contains the c_user cookie, which itself contains that visitor's unencrypted Facebook ID.

*Figure 5. Subset of Cookies Detected while Logged in to Facebook*

| Name | Value | Domain | P. | Expire… | Size | HttpOnly | Secure | Same… | Same… | Partiti… | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|
| fr | 0ZK7dQa8fa2g5DiMd.AWX9l08xoSV9CwuOKd9… | .facebook.com | / | 2023-… | 84 | ✓ | ✓ | None | | | Medium |
| c_user | 1350880181 | .facebook.com | / | 2023-… | 16 | | ✓ | None | | | Medium |
| datr | SZXHYQopGQtw4BOXzji3upbt | .facebook.com | / | 2024-… | 28 | ✓ | ✓ | None | | | Medium |
| xs | 38%3A6dsYAnm_SD2JBw%3A2%3A16506925… | .facebook.com | / | 2023-… | 99 | ✓ | ✓ | None | | | Medium |
| presence | C%7B%22t3%22%3A%5B%7B%22i%22%3A… | .facebook.com | / | Session | 154 | | ✓ | | | | Medium |
| sb | SZXHYerrNWHVaR3tzfEkne1D | .facebook.com | / | 2024-… | 26 | ✓ | ✓ | None | | | Medium |

27. A Facebook ID, when appended to the end of the "facebook.com" URL, will lead to its corresponding Facebook profile and all personally identifiable information listed on that profile.[13]

28. When a visitor accesses a video webpage while not logged into Facebook or having not ever created a Facebook account, the Forbes.com website transmits a smaller set of cookies, including the fr and _fbp cookies. The fr cookie

---

[13] "How usernames and user IDs are used on Facebook Profiles," https://www.facebook.com/help/211813265517027 (last accessed November 21, 2022).

contains, at least, an encrypted Facebook ID and browser identifier.[14] The _fbp cookie contains, at least, an unencrypted value that identifies and tracks a user across websites.[15] Facebook uses, at minimum, these two cookies to track and identify users.[16]

*Figure 6. Subset of Cookies Detected While Logged Out of Facebook*

| ame | Value | Domain | P. | Expire... | Size | HttpOnly | Secure | Same... | Same... | Partiti... | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|
| fr | 0RYCqbed5s0UokkTd.AWW2WruXjvBDZRi9nSV... | .facebook.com | / | 2023-... | 84 | ✓ | ✓ | None | | | Medium |
| wd | 1440x719 | .facebook.com | / | 2022-... | 10 | | ✓ | Lax | | | Medium |
| dpr | 2 | .facebook.com | / | 2022-... | 4 | | ✓ | None | | | Medium |
| datr | SZXHYQopGQtw4BOXzji3upbt | .facebook.com | / | 2024-... | 28 | ✓ | ✓ | None | | | Medium |
| locale | en_US | .facebook.com | / | 2022-... | 11 | | ✓ | None | | | Medium |
| sb | SZXHYerrNWHVaR3tzfEkne1D | .facebook.com | / | 2024-... | 26 | ✓ | ✓ | None | | | Medium |
| _fbp | fb.1.1669661554131.303741882 | .forbes.com | / | 2023-... | 32 | | | Lax | | | Medium |
| _pctx | %7Bu%7DN4lgrgzgpgThIC4B2YA2qA05owMo... | .forbes.com | / | 2023-... | 104 | | ✓ | Lax | | | Medium |
| _pnxd | 6f7302a96debca4b5ee3b8eeeedfbdca42f | .forbes.com | / | 2024-... | 40 | | | Strict | | | Medium |
| __gads | ID=4f4b236b8d8f6f9f:T=1669661497:S=ALNI_M... | .forbes.com | / | 2023-... | 75 | | | | | | Medium |
| pushly.user_puuid | DarfxIOqerSUwzFfRr5IumJnMtZho1mz | .forbes.com | / | 2024-... | 49 | | | Strict | | | Medium |
| _pnlspid | 18735 | .forbes.com | / | 2024-... | 13 | | | Strict | | | Medium |

29. Thus, Facebook is able to use the c_user, fr, and fbp cookies to link a website visitor to their Facebook ID and corresponding Facebook profiles. Both are personally identifiable information within the meaning of the VPPA, as both allow an individual to discern the identity of a visitor who watches a video on the Forbes.com website.

30. The Pixels on Defendant's Forbes.com website utilizes these Facebook cookies to combine identified visitor information with Event data.[17] This allows Facebook to match a Forbes.com visitor with their Facebook account, as well as identify and track what Forbes.com videos they have watched. Thus, by

---

[14] "Report of Re-Audit" at p.33, Data Protection Commissioner, Facebook Ireland Ltd, http://www.europe-v-facebook.org/ODPC_Review.pdf (last accessed November 21, 2022).
[15] "_fbp," Cookie Database, https://cookiedatabase.org/cookie/facebook/_fbp/ (last accessed November 21, 2022).
[16] "Cookies & other storage technologies" https://www.facebook.com/policy/cookies/(last accessed November 21, 2022).
[17] "Get Started" https://developers.facebook.com/docs/meta-pixel/get-started (last accessed November 21, 2022).

compelling a visitor's browser to disclose the c-user, fr and _fbp cookies alongside event data for video webpages, Defendant knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video watch history.

**Plaintiff's Experience**

31. In or around 2005, Plaintiff created a Facebook account. Since the creation of this Facebook account, plaintiff has regularly been logged into his Facebook account on all of his devices.

32. On or around 2019, Plaintiff subscribed to Forbes.com by creating an account on the Forbes.com website.

33. Following the creation of that account, Plaintiff used the Forbes.com website to watch videos, among other things. When Plaintiff watched videos on the Forbes website, Defendant disclosed his event data—which included the video's title and URL—along with personal identifiers collected through, *inter alia*, the c_user, fr, and _fbp cookies.

34. By disclosing this information, Defendant disclosed Plaintiff's personally identifiable information to a third party, in violation of the VPPA.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action on their own behalf and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4). Plaintiff intends to seek certification of a Class initially defined as follows:

> All persons residing in the United States of America who have a Facebook account and are a current or former subscriber of Forbes.com and have viewed at least one video on the Forbes.com website after its implementation of Meta Tracking Pixels.

Excluded from each of the above Classes is Defendant, including any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal

representatives, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judge and the court personnel in this case and any members of their immediate families. Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

36. *Numerosity*. Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members is impractical. The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendant's possession, custody, or control, such as subscription and user account records.

37. *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

   a. Whether Defendant records, collects and transmits Plaintiff's and Class Members' personal identifiable information;
   b. Whether Defendant unlawfully discloses Plaintiff's and Class members' personal identifiable information in violation of the VPPA;
   c. Whether Defendant's disclosures were committed knowingly and willfully; and
   d. Whether Defendant's disclosures were committed without the consent of Plaintiffs and Class Members.

38. *Typicality*. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class Members because Plaintiff, like all members of the Class, is a subscriber of Forbes.com and watched videos on the Forbes.com website. Further, Plaintiff's personally identifiable information, like that of every other Class

Member, was misused and/or disclosed by Defendant.

39. *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiff has retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiff intends to prosecute this action vigorously. Plaintiff's claims are typical of the claims of other members of the Classes and Plaintiff has the same non-conflicting interests as the other Class Members. Therefore, the interests of the Classes will be fairly and adequately represented by Plaintiff and her counsel.

40. *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

41. Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied.

42. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendant has acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

///
///
///
///

# CLAIM FOR RELIEF

## Violation of the Video Privacy Protection Act ("VPPA")

## 18 U.S.C. §2710, *et seq.*

(On Behalf of Plaintiff and the Nationwide Class)

43. Plaintiff repeats and incorporates herein by reference each and every allegation contained in paragraphs 1 through 42, inclusive, of this Complaint as if set forth fully herein.

44. Defendant is a "video tape service provider" as defined under the VPPA because it is an entity "engaged in the business in, or affecting interstate or foreign commerce, of rental, sale or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Specifically, Defendant hosts, embeds, and displays video content to its subscribers on its Forbes.com website.

45. Plaintiff and Class Members are "consumers" as defined under the VPPA because they are "renter[s], purchaser[s], or subscriber[s] of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Specifically, Plaintiff and Class Members are subscribers of and purchased subscriptions with Forbes.com.

46. Plaintiff and Class Members viewed videos on the Forbes.com website.

47. Through its implementation of Pixels, Defendant disclosed Plaintiff's and Class Members' personally identifiable information to a third party—Facebook. Specifically, Defendant implemented Pixels into its Forbes.com website, which collected and disclosed to Facebook Plaintiff's and Class Members' first names, last names, email addresses, Facebook ID and event information, such as the title and URL of the videos they viewed, among other information.

48. Defendant implemented these Pixels and disclosed Plaintiff's and Class Member's personally identifiable information to Facebook in order to

increase its revenues and better target its readers and subscribers with advertisements placed both before a video plays and on webpage which feature video content. Defendant's disclosures were at all times knowing and done for its own pecuniary benefit.

49. Plaintiff and Class Members did not provide Defendant with any form of consent—written or otherwise—to disclose their personally identifiable information to Facebook or any other third parties.

50. Defendant's disclosures were not made in the "ordinary course of business" as permitted under the VPPA. The VPPA defines the "ordinary course of business" as "only debt collection services, order fulfillment, request processing, and the transfer of ownership." § 2710(a)(2). Defendant did not disclose Plaintiff's and Class Members' personally identifiable information to Facebook for any of these purposes.

51. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff seeks (i) declaratory relief; (ii) equitable and injunctive relief enjoining Defendant's unlawful disclosures of Plaintiff's and Class Members' personally identifiable information; (iii) statutory damages or $2,500 for each violation of the VPPA pursuant to § 2710(c); and (iv) reasonable attorney's fees and costs and other litigation expenses, as allowable by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all of the Class Members, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A. For an Order certifying the Class as defined herein and appointing Plaintiff and her Counsel to represent the Class;

B. For an Order declaring that Defendant's conduct violates the Video Privacy Protection Act;

B.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the unlawful disclosure of Plaintiff's and Class Members' personally identifying information;

E.  For an award statutory damages;

F.  For an award of punitive and treble damages, as warranted, in an amount to be determined at trial;

F.  For an award of costs of suit, litigation expenses and attorneys' fees, as allowable by law; and

G.  For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial for all claims so triable.

Dated: December 8, 2022                    Respectfully Submitted,

/s/ *Thiago M. Coelho*
Thiago M. Coelho
Carolin K. Shining
Jonas P. Mann
Jennifer M. Leinbach
Jesse S. Chen
**WILSHIRE LAW FIRM, PLC**
*Attorneys for Plaintiff and Proposed Class*